UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ROBERT CURRY, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6:24-CV-021-CHB-CJS |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| DANNY DODD, WARDEN,[1] | ) | |
| | ) | |
| Respondent. | ) | |

*** *** *** ***

This matter is before the Court on the Report and Recommendation filed by United States Magistrate Judge Candace J. Smith. [R. 30]. Previously, the Court entered an order adopting a prior Recommendation by Judge Smith ("First Recommendation"), [R. 15], which recommended dismissing Petitioner's Petition for Writ of Habeas Corpus as untimely, [R. 16], and a corresponding Judgment, [R. 17]. The present Report and Recommendation ("Second Recommendation") addresses various motions by Petitioner Robert Curry ("Petitioner") made after the previous dismissal of his case, including a Motion to Alter Judgment under Federal Rule of Civil Procedure 59(e) ("Rule 59(e) Motion"), [R. 18], a Motion to Reopen Federal Habeas Proceedings under Federal Rule of Civil Procedure 60(b)(6) ("Rule 60(b) Motion"), [R. 19], a Motion to Appoint Conflict-Free Counsel ("Motion for New Counsel"), [R. 20], and a Motion to Stay Proceedings (Motion to Stay"), [R. 21]. Respondent Warden Danny Dodd ("Respondent") opposed each motion in a combined response, [R. 25], and Petitioner replied, [R. 26], before the

[1] Danny Dodd is now the Warden at Lee Adjustment Center, the facility in which Petitioner Robert Curry is currently housed. [R. 28, p. 1 n.1]. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Danny Dodd for Daniel Akers in this action.

matter was submitted to Judge Smith. In the Second Recommendation, Judge Smith recommends denying the Rule 59(e) Motion as moot, granting the Rule 60(b) Motion, denying the Motion for New Counsel, and denying the Motion to Stay as moot. [R. 30, p. 2]. Both parties objected to the Second Recommendation, [R. 31 (Respondent's objections)]; [R. 32 (Petitioner's objections)], and both responded to the other's objections, [R. 33 (Petitioner's response)]; [R. 34 (Respondent's response)]. This matter is therefore ripe for review.

For the reasons set forth below, the court will adopt the Second Recommendation and deny the Motion to Stay as moot, deny the Rule 59(e) Motion, grant the Rule 60(b) Motion in part, and deny the Motion for New Counsel.

## I. BACKGROUND

The Court's previous Order Adopting Magistrate Judge's Amended Report and Recommendation set out the factual background of this case as follows:

> On June 17, 2013, a Harlan County grand jury returned an indictment against Curry on charges of murder, second degree disorderly conduct, menacing, resisting arrest, and being a persistent felony offender. *See* [R. 15, p. 1 (citation omitted)]. He proceeded to trial and was found guilty of intentional murder. *Id.* (citations omitted). On April 16, 2014, he was sentenced to twenty-five years of imprisonment, and a final judgment was entered that day. *Id.* (citations omitted).
>
> Petitioner appealed, and the Supreme Court of Kentucky affirmed his conviction on February 18, 2016. *Id.* (citation omitted). On December 5, 2016, Petitioner filed a motion in state court to vacate, set aside, or correct his sentence, pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42. *Id.* (citation omitted). That motion was denied on August 2, 2018. *Id.* (citation omitted). However, on August 21, 2020, the Court of Appeals of Kentucky remanded the matter to the Harlan Circuit Court to hold an evidentiary hearing. *Id.* (citation omitted). The state court conducted the evidentiary hearing as directed, but ultimately denied the RCr 11.42 motion on November 12, 2021. *Id.* (citation omitted). Petitioner again appealed, and the state court's decision was affirmed on January 27, 2023. *Id.* (citation omitted). After a Petition for Rehearing was denied, Petitioner sought discretionary review with the state's highest court, which was denied on August 16, 2023. *Id.* (citation omitted).

> On February 14, 2024, Petitioner filed his Petition for Writ of Habeas Corpus in this Court. [R. 1].

[R. 16, pp. 2–3].

Throughout Petitioner's underlying state criminal proceedings and the habeas action before this Court, Petitioner has been represented by the Kentucky Department of Public Advocacy (the "DPA"). [R. 1, pp. 4, 30]. At the time Petitioner's § 2254 Petition was filed, the Post-Trial Division of the DPA was structured in relevant part as follows: Elizabeth B. McMahon ("McMahon") was the Director; Samuel N. Potter ("Potter") was a Managing Attorney and was under McMahon's supervision; and J. Ryan Chailland ("Chailland") and David M. Barron ("Barron") were attorneys under Potter's supervision. [R. 7]; [R. 18, p. 18]. After the Court received Petitioner's petition and conducted an initial review, the Court noted a potential timeliness issue under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and ordered Petitioner to clarify the date on which he filed his RCr 11.42 motion.[2] *See* [R. 4]. Chailland filed a response on behalf of Petitioner in which he admitted he "may have filed Curry's petition for a Writ of Habeas Corpus late" and attributes his lateness to a miscalculation of the filing deadline due to a "systemic" issue at the DPA regarding the education of non-capital attorneys on federal habeas practice.[3] [R. 5, pp. 2–3].

---

[2] To briefly summarize the Court's prior Order, it was unclear whether Petitioner filed his RCr 11.42 motion on September 5, 2016, or on December 5, 2016. [R. 4, pp. 4–5]. This issue appeared determinative as to the timeliness of Petitioner's § 2254 motion; if Petitioner filed his RCr 11.42 motion on December 5, 2016, then—accounting for statutory tolling while Petitioner's case proceeded on collateral review in state court—the one-year federal habeas filing period would have expired on January 29, 2024, *id.* at 5; but if Petitioner filed his RCr 11.42 motion on September 5, 2016, then—again, accounting for statutory tolling—the one-year filing period would have expired on April 29, 2024, *id.* at 5–6. Because Petitioner's § 2254 petition was filed on February 14, 2024, the Court noted the possibility that Petitioner's petition might only be timely had he filed his RCr 11.42 motion on September 5, 2016. *Id.*

[3] Although Chailland did not expressly state that he "miscalculated" the filing deadline, such is clear from his own explanation. Specifically, Chailland states that he "believed and argues that the finality date for Curry's direct appeal was March 10, 2016," that he "began calculating the time that Curry had to file his habeas petition" from that date, which was when Curry's direct appeal appeared to become final "[p]er [the] plain language" of the direct appeal opinion, and that he "believed Curry's petition was due February 17, 2024." [R. 5, p. 3]. When discussing the DPA's training regarding deadlines, Chailland wrote that "the case at hand[] demonstrate[s] that attorneys from the DPA believe that the federal habeas clock begins on finality of the direct appeal, not the date the direct appeal was rendered.

Chailland further recognized that a factual discussion of his own performance might be required to construe Petitioner's petition as timely by applying the doctrine of equitable tolling, leading him to request the appointment of new counsel for Petitioner. *Id.* at 4–5. The Court accordingly construed Chailland's filing as a motion for extension of time to allow for substitution of counsel. [R. 6].

Shortly after Potter was substituted for Chailland to serve as Petitioner's counsel, *see* [R. 7], Chailland resigned from the DPA, *see* [R. 18, p. 9]. As Petitioner's new counsel, on July 2, 2024, Potter responded to the Court's Show Cause Order, [R. 6], arguing that the doctrine of equitable tolling applied because Chailland had abandoned Petitioner, thereby rendering Petitioner's petition timely, [R. 8, pp. 3–8]. Potter spoke with Petitioner approximately one month later, in August of 2024, to discuss the status of the case. [R. 18, pp. 10–11]. On December 2, 2024, the Court ordered Respondent's response to the Show Cause Order, and permitted Petitioner to reply within fourteen days of the response. [R. 10]. Respondent filed a timely response, [R. 13], but Petitioner did not reply.

On July 3, 2025, Judge Smith issued the First Recommendation, finding Petitioner's equitable tolling argument unpersuasive and recommending Petitioner's petition be dismissed as untimely. [R. 15]. Judge Smith therein reasoned that because "there is no evidence here that Attorney Chailland failed to communicate with [Petitioner] or otherwise ignored his requests," and because it instead appeared that Chailland merely miscalculated the filing deadline, Chailland's conduct did not amount to the "extraordinary circumstances" required to justify equitable tolling. *Id.* at 8–9. The parties had fourteen days within which to file objections to the First

This problem is systematic in nature, as the DPA does not educate non-capital attorneys on federal habeas practice." *Id.*

Recommendation, *id.* at 14, but none were filed. The Court thus adopted Judge Smith's First Recommendation on October 16, 2025, as the opinion of the Court, [R. 16], and entered a corresponding Judgment denying Petitioner's Petition and dismissing the case, [R. 17].

Less than a month thereafter, on November 13, 2025, Petitioner filed the Rule 59(e) Motion, [R. 18], the Rule 60(b) Motion, [R. 19], the Motion for New Counsel, [R. 20], and the Motion to Stay, [R. 21]. Therein, Petitioner argued the Court's Order adopting Judge Smith's First Recommendation and the corresponding Judgment denying Petitioner's petition and dismissing his case should be set aside and his case should be reopened. *See* [R. 18, p. 11]. In support, Petitioner contended that Potter could not effectively investigate Petitioner's equitable tolling claim because Potter was Chailland's supervisor at the time Chailland miscalculated Petitioner's filing deadline and Chailland attributed his error to the (lack of) training at the DPA, meaning in order for Potter to make an equitable tolling argument on behalf of Petitioner, he would have had to argue his own failure to train Chailland. *See id.* at 7, 14.

Petitioner also argued that Potter abandoned him, pointing out that Potter was placed on a leave of absence from the DPA in August of 2025 due to various failures surrounding his supervision of subordinates and his participation in his active cases. *Id.* at 7–8. In Petitioner's specific case, Potter's failures allegedly materialized in his failure to file a reply brief addressing equitable tolling, failure to object to the First Recommendation, and failure since August of 2024 to communicate with Petitioner about the status of his case despite Petitioner's repeated efforts to contact Potter. *Id.* at 10–12. Petitioner further requested that the Court appoint Joseph Perkovich, an attorney not employed by the DPA, as new counsel under 18 U.S.C. § 3006A. [R. 20, p. 1]. Petitioner claimed none of his current appointed counsel could adequately represent him: Potter has a conflict of interest regarding equitable tolling and, moreover, no longer is assigned to this

case within the DPA; McMahon, as Potter's supervisor, oversaw both Potter and Chailland in the DPA, and is thus implicated in the same conflict of interest; and Barron was Potter's subordinate during Potter's representation of Petitioner, and is thus implicated in the same conflict of interest as well. *Id.* at 2. Petitioner also contended that should the Court order additional discovery in this matter to address the facts surrounding Potter's alleged abandonment, Barron and McMahon are "potential fact witnesses" who "would likely have to examine under oath current employees within the unit regarding the apparent misconduct of those who previously represented" Petitioner, creating a "difficult and untenable" situation. *Id.* at 2–3.

Respondent opposed Petitioner's various motions in a combined response. [R. 25]. As to Petitioner's requests to reopen the case under Rule 59(e) and Rule 60(b)(6), Respondent argued relief from the Court's judgment is unnecessary because even if Potter abandoned Petitioner, Petitioner has still not shown that the equitable tolling doctrine would render his habeas petition timely. *Id.* at 8. And, as to Petitioner's request for appointment of new counsel, Respondent argued that no conflict of interest exists as to Barron and McMahon, that Petitioner would suffer no actual prejudice from their continued representation, and that the Court should not credit their arguments since they continued to file on behalf of Petitioner despite their purported conflict. *Id.* at 16–20.

After Petitioner filed a reply, [R. 29], the matter was submitted to Judge Smith, who issued the Second Recommendation on May 27, 2026, [R. 30]. Therein, Judge Smith recommends denying the Rule 59(e) Motion as moot, granting the Rule 60(b) Motion in part, denying the Motion for New Counsel, and denying the Motion to Stay. [R. 30, p. 2]. Both parties objected to the Second Recommendation, [R. 31 (Respondent's Objections)]; [R. 32 (Petitioner's Objections)], and both responded to the other's objections, [R. 33 (Petitioner's Response)]; [R. 34 (Respondent's Response)]. This matter is therefore ripe for review.

## II. LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(B), a district court judge may designate a Magistrate Judge to conduct evidentiary hearings and submit proposed findings of fact and recommendations for the disposition of certain motions, including motions to suppress evidence. Within fourteen days of being served a copy of that recommended disposition, any party may file written objections to the Magistrate Judge's proposed findings and recommendation. 28 U.S.C. § 636(b)(1). This Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see also Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection, which preserves the issue for appeal, "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 1997) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, *2 (6th Cir. 1997)) (internal quotation marks omitted).

"[A]n objection to an R&R is not meant to be simply a vehicle to rehash arguments set forth in the petition, and the Court is under no obligation to review de novo objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs." *Dundee v. Univ. Hosps. Corp*, No. 1:19-CV-01141, 2020 WL 511520, at *1 (N.D. Ohio Jan. 31, 2020) (citing *Howard v. Sec. of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Roberts v. Warden, Toledo Corr. Inst.*, No. 1:08-CV-00113, 2010 WL 2794246, at *7 (S.D. Ohio July 14, 2010) ("The Court is under no obligation to review de novo objections that are merely perfunctory or an attempt to have the Court reexamine the same arguments set forth in the original petition."); *McClain v. Hanna*, No. 2:19-CV-10700, 2019 WL 7288768, at *2 (E.D. Mich. Dec. 30, 2019) ("[O]bjections to a report and recommendation should not be used as a

vehicle to rehash arguments previously made by the objecting party."). In prohibiting "general objections" to magistrates' reports, the Sixth Circuit stated that

> [a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

*Howard*, 932 F.2d at 509; *see also Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.1995))); *see also Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) (same). Ultimately, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1)(C).

## III. ANALYSIS

### A. Motion to Stay

Judge Smith reasoned that because all pending motions have been briefed and because the record is sufficient to resolve each pending motion, "whether [Petitioner] is represented by counsel (or not) has no impact on the disposition of the[] [pending] motions." [R. 30, p. 6]. Judge Smith thus recommended that Petitioner's Motion to Stay be denied. *Id.* Neither party objected to this conclusion, *see* [R. 31]; [R. 32], so the Court need not analyze the motion de novo. *See Howard*, 932 F.2d at 509. Nevertheless, the Court has reviewed the issue and agrees with the Second Recommendation's analysis on this motion. The Court therefore accepts Judge Smith's Second Recommendation on this matter, and will deny the motion to stay. *See* [R. 30, p. 13].

**B. Rule 60(b) Motion**

Turing to Petitioner's motion for relief from judgment under Rule 60(b), Judge Smith noted that Petitioner's arguments for relief under Rule 59(e) and Rule 60(b)(6) are "nearly identical." [R. 30, p. 6]. Judge Smith then reasoned that because "the Sixth Circuit has characterized Rule 60(b)(6) as a more exacting standard," *id.* at 6–7 (citation omitted), and because "the issue of attorney abandonment more often arises in the context of a Rule 60(b) motion," *id.* at 7, the Court's analysis should primarily focus on Petitioner's Rule 60(b) motion, *id.*

1. Second Recommendation

Judge Smith first addressed the timeliness of Petitioner's Rule 60(b) motion. Rule 60(c) requires motions under Rule 60(b)(6) to be "made within a reasonable time." Fed. R. Civ. P. 60(c). Because the Court entered judgment denying Petitioner's Petition on October 16, 2025, and Petitioner's motion was filed 28 days later on November 13, 2025, Judge Smith found Petitioner's motion to be timely. [R. 30, p. 7].

Next, Judge Smith addressed the legal standard for relief under Rule 60(b)(6):

> The case law directs that Rule 60(b)(6) "applies 'only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule.'" *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). Further, the Sixth Circuit has clarified that relief under Rule 60(b)(6) is proper only in "unusual and extreme situations where principles of equity *mandate* relief." *Olle*, 910 F.2d at 365 (emphasis in original). As a result of this high bar, relief under the Rule is rarely granted in habeas proceedings. *See Sheppard v. Robinson*, 807 F.3d 815, 820 (6th Cir. 2015). Further, Rule 60(b)(6) requires a "case-by-case inquiry . . . [that] intensively balance[s] numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *West v. Carpenter*, 790 F.3d 693, 697 (6th Cir. 2015).

[R. 30, pp. 7–8].

Applying this standard to Petitioner's case, Judge Smith noted that "other circuits have held the misconduct of habeas counsel"—such as Potter's purported abandonment of Petitioner—"can, at times, serve as an 'extraordinary circumstance' that warrants relief under Rule 60(b)(6)." *Id.* at 8 (citing *Mackey v. Hoffman*, 682 F.3d 1247, 1251 (9th Cir. 2012); *Ramirez v. United States*, 799 F.3d 845, 854 (7th Cir. 2015); *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)). Judge Smith particularly found *Mackey* to be "a helpful analogue for the present case," observing that there, the Ninth Circuit found the deprivation of the opportunity for the petitioner to proceed *pro se* and the jeopardization of the petitioner's appellate rights to be central to his entitlement to Rule 60(b) relief. *Id.* at 9; *see Mackey*, 682 F.3d at 1253. Judge Smith found Petitioner's circumstances analogous to *Mackey*, reasoning that "[l]ike the attorney in *Mackey*, Potter ceased representing [Petitioner] and failed to notify the Court. As such, [Petitioner] was 'deprived of the opportunity to proceed *pro se*' after Potter filed [Petitioner's] show cause response." [R. 30, p. 9].

Judge Smith then considered Respondent's argument, which asserted that Rule 60(b)(6) relief "is unwarranted here because [Petitioner] is still not entitled to equitable tolling and thus his Petition remains untimely." *Id.* at 10 (citing [R. 25, pp. 8–16]). Judge Smith found this position unpersuasive, determining that it "overlooks that [Petitioner] was denied the ability to object to the [First Recommendation] and, consequently, likely waived his right to appeal." *Id.* (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Gant v. Genco I, Inc.*, 274 F. App'x 429, 432 (6th Cir. 2008)). Judge Smith reasoned that because the Second and Ninth Circuits found the deprivation of appellate rights warranted Rule 60(b)(6) relief, *id.* (citing *Mackey*, 682 F.3d 1253; *Ramirez*, 799 F.3d at 854), and because "other district courts within this circuit have granted relief from judgment under Rule 60(b) where an extraordinary circumstance stood in the way of a movant's exercise of appellate rights" or filing of objections, *id.* (citing *Pope v. Christian*, No. 4:23-CV-

12554, 2026 WL 165452, at *2 (E.D. Mich. Jan. 21, 2026); *Reynolds v. Boyd*, No. 3:14-cv-1249, 2021 WL 6618457, at *1 (M.D. Tenn. July 20, 2021), *report and recommendation adopted*, 2022 WL 187815, at *1 (M.D. Tenn. Jan. 20, 2022); *Santiago v. Hurley*, No. 2:05-CV-560, 2006 WL 3196295, at *3 (S.D. Ohio Nov. 2, 2006)), whether or not Petitioner's underlying petition was timely has no impact on his entitlement to Rule 60(b)(6) relief, *id.* In other words, whether Petitioner is entitled to relief under Rule 60(b)(6) is a separate and distinct inquiry from whether Petitioner's underlying habeas petition is untimely, and Respondent's argument spoke only to the latter while neglecting the former. *See id.*

Accordingly, Judge Smith concluded that Petitioner is entitled to relief from judgment under Rule 60(b)(6). *Id.* Specifically, Judge Smith recommended that the Court vacate its prior Order adopting the First Recommendation, [R. 16], and corresponding Judgment, [R. 17], and found Petitioner "should be afforded the opportunity to file objections to the [First Recommendation]." *Id.*

Both parties objected to Judge Smith's Second Recommendation. *See* [R. 31 (Respondent's Objections)]; [R. 32 (Petitioner's Objections)]. The Court will address the objections, as well as the responses thereto, [R. 33 (Petitioner's Response)]; [R. 34 (Respondent's Response)], in turn.

2. Analysis: Respondent's Objections

Respondent raises two objections to the Rule 60(b)(6) portion of Judge Smith's Second Recommendation. *See* [R. 31, p. 7]. Respondent's first objection goes to the underlying merits of the untimely petition and argues "the record establishes that Chailland merely miscalculated the filing deadline, and that necessarily means that [Petitioner] is not entitled to equitable tolling." *Id.* Respondent urges the Court to "consider and reject [Petitioner's] equitable tolling argument on the merits now" without setting aside its prior order and judgment, claiming the record is sufficient to

do so. *Id.* According to Respondent, Petitioner "has never provided any reason to think that Chailland did anything worse than simply miscalculate the filing deadline," *id.*, and such negligence does not warrant equitable tolling according to both the United States Supreme Court and the Sixth Circuit, *id.* at 8–9 (citing *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007); *Jurado v. Burt*, 337 F.3d 638, 644 (6th Cir. 2003); *Elliott v. Dewitt*, 10 F. App'x 311, 313 (6th Cir. 2001); *Giles v. Beckstrom*, 826 F.3d 321 (6th Cir. 2016)). Based on this controlling caselaw, Respondent argues the Court should "decline to depart from its previous holding" and should not provide Petitioner with "*yet another* opportunity at arguing equitable tolling." *Id.* at 11 (emphasis in original).

In response, Petitioner claims that because Chailland and Potter both suffered conflicts that prevented an adequate inquiry into the applicability of equitable tolling, this matter requires further investigation to determine if it warrants equitable tolling. [R. 33, pp. 6–8]. As a result, Petitioner argues the Court should not credit Respondent's contention that the Court can rule on the equitable tolling issue at this time. *Id.* "Instead," Petitioner contends, "this Court should provide adequate time for that investigation . . . and for [non-DPA] counsel . . . to then file pleadings" addressing whether equitable tolling applies here. *Id.* at 8.

As a preliminary matter, the Court notes that Respondent's objection raises the same arguments previously made in Respondent's response to Petitioner's motions. *Compare* [R. 25, pp. 8–16 (response to Petitioner's motions)], *with* [R. 31, pp. 7–11 (objections to Second Recommendation)]. Respondent's conclusory objection does not attempt to explain how Judge Smith erred in her understanding of the facts or the law relevant to Rule 60(b)(6). Instead, Respondent broadly objects to the Second Recommendation's conclusion based on the same argument that Judge Smith considered and rejected in reaching that conclusion. The Court need

not review these rehashed arguments that Judge Smith has already thoughtfully and accurately addressed. *See Dundee*, 2020 WL 511520, at *1 (citing *Howard*, 932 F.2d at 509); *Roberts*, 2010 WL 2794246, at *7; *McClain*, 2019 WL 7288768, at *2. Objections such as these that seek to take a "second bite at the apple" "undermine the purpose of the Federal Magistrate's Act, 28 U.S.C. § 636, which serves to reduce duplicative work and conserve judicial resources." *Owens v. Comm'r of Soc. Sec.*, No. 1:12-CV-47, 2013 WL 1304470, at *3 (W.D. Mich. Mar. 28, 2013).

Nevertheless, based on a review of the record, the Court agrees with Judge Smith's analysis, findings, and conclusions under any applicable standard. While it is true that relief under Rule 60(b)(6) is only warranted in "exceptional or extraordinary circumstances where principles of equity mandate relief," *Henness*, 766 F.3d at 553–54, such circumstances are present here. The record is clear—and Respondent does not dispute—that Potter failed to undertake many of his duties as Petitioner's counsel, including keeping Petitioner informed as to the status of his case and filing crucial documents, such as a reply to the Court's show cause order and objections to the First Recommendation. [R. 18, pp. 5–6]; [R. 31, pp. 11–12]. Potter's conduct thus likely constitutes abandonment. *See Maples v. Thomas*, 565 U.S. 266, 283–87 (2012) (finding that attorneys abandoned a client where they stopped working on a case and failed to notify the court or the client); *Mackey*, 682 F.3d at 1248–49, 1253 (describing possible attorney abandonment where counsel failed to file a reply in postconviction briefing and, upon judgment being entered against the petitioner, did not notify the petitioner or file an appeal); *Ramirez*, 799 F.3d at 849, 850 (finding postconviction counsel abandoned the petitioner where counsel "did not inform [the petitioner] of the court's decision; . . . failed to file any postjudgment motions; and . . . failed to file a notice of appeal").

Moreover, Potter's abandonment constitutes grounds for Rule 60(b) relief, both within this circuit and in others. *See Reynolds*, 2021 WL 6618457, at *5 ("[Petitioner's] abandonment by counsel is the kind of egregious conduct that warrants relief under Rule 60(b)(6)."), *report and recommendation adopted*, 2022 WL 187815, at *1; *Platinum Rehab., Ltd. v. Platinum Home Health Care Servs., LLC*, No. 1:11-CV-1021, 2012 WL 4461502, at *3 (N.D. Ohio Sep. 25, 2012) ("[D]istrict courts in the Sixth Circuit have held that Rule 60(b)(6) may provide relief from judgment in instances of counsel's gross neglect and abandonment." (citing *Reno v. Int'l Harvester Co.*, 115 F.R.D. 6, 8–10 (S.D. Ohio 1986); *Nair v. Columbus State Cmty. Coll.*, 2006 WL 13233 (S.D. Ohio Jan. 3, 2006))); *Mackey*, 682 F.3d at 1253 ("[W]hen a federal habeas petitioner has been inexcusably and grossly neglected by his counsel in a manner amounting to attorney abandonment in every meaningful sense that has jeopardized the petitioner's appellate rights, a district court may grant relief pursuant to Rule 60(b)(6)."). This is especially true where, as here, Petitioner's appellate rights have been harmed by counsel's egregious neglect of his case.[4] *See Ramirez*, 799 F.3d, at 854, 856 (finding Rule 60(b)(6) relief appropriate where "[c]ounsel's abandonment deprived [Petitioner] of the ability to press his ineffective-assistance argument on appeal"); *Mackey*, 682 F.3d at 1253 (finding Rule 60(b)(6) relief appropriate where an "attorney's abandonment . . . jeopardized the petitioner's appellate rights"). Additionally, as the Second Recommendation found based on *Mackey*, Petitioner was also deprived of the opportunity to proceed *pro se*. [R. 30, p. 9 (quoting *Mackey*, 682 F.3d at 1253)]. Accordingly, the Court overrules Respondent's first objection, both because it does not present new arguments beyond those already addressed by Judge Smith, *see Dundee*, 2020 WL 511520, at *1 (citing *Howard*, 932 F.2d at 509);

---

[4] The Court recognizes Respondent disputes whether Petitioner's appellate rights have been harmed to the extent necessary to warrant relief under Rule 60(b)(6). *See* [R. 31, pp. 11–14]. The Court considers and rejects this argument below. *See infra*.

*Roberts*, 2010 WL 2794246, at *7; *McClain*, 2019 WL 7288768, at *2, and because the facts and the law reveal Petitioner is entitled to relief from judgment under Rule 60(b)(6).

Respondent's second objection asserts that "Potter's failure to file objections is not tantamount to depriving [Petitioner] of his right to request a [certificate of appealability]; instead, failing to file objections constitutes a mere forfeiture, which could be excused in the interests of justice." [R. 31, p. 7]. As a preliminary argument, Respondent casts doubt on whether Potter truly abandoned Petitioner, noting that although "Potter may not have filed the entire spectrum of documents that [Petitioner] wanted," he "still filed the most important one—the response to the Court's show-cause order" in which he argued equitable tolling applied to Petitioner's habeas petition. *Id.* at 11–12. But even assuming Potter abandoned Petitioner, Respondent notes that the Rule 60(b)(6) analysis in Judge Smith's Second Recommendation "hinge[s] on the assumption that [Petitioner] would likely be denied his right to file an appeal." *Id.* at 12. Respondent then points out that Petitioner could still request a certificate of appealability from the Sixth Circuit, meaning his right to appeal has not been fully denied. *Id.* In support, Respondent cites to Sixth Circuit caselaw indicating that a party's failure to object to a Report and Recommendation constitutes a forfeiture of appellate rights, not a waiver thereof, meaning appeal is not always barred. *Id.* at 12–13 (citing *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019)). In sum, Respondent essentially argues Rule 60(b)(6) relief is inappropriate because Petitioner's avenue to appeal is not completely foreclosed.

Petitioner raises various arguments in response. First, Petitioner notes that this Court has all the information necessary to address Petitioner's pending motions, so the matter need not be "punt[ed]" to the Sixth Circuit. [R. 33, p. 2]. Second, Petitioner claims that even if Potter made

one filing on behalf of Petitioner, he still failed to file a reply brief to be submitted for Judge Smith's consideration as part of the First Recommendation, failed to object to the First Recommendation once it was issued, and the single filing he *did* enter was composed while Potter had a conflict of interest in this case. *Id.* at 3. Based on these issues with Potter's representation, Petitioner contends his right to appeal is not the sole relevant issue; rather, Potter's abandonment implicates the quality of the equitable tolling arguments that were presented to the Court and addressed in the First Recommendation. *Id.* at 3. In other words, Petitioner argues an appeal cannot cure the deficiencies in his equitable tolling briefing; only re-opening proceedings via Rule 60(b)(6) relief can. *See id.* Lastly, Petitioner claims that should the Court send the matter to the Sixth Circuit at this stage, the Sixth Circuit would "almost certainly" recognize Potter's abandonment and remand the matter to this Court for further development, thereby placing the Court in the same position as it stands presently and causing unnecessary delay. *Id.* at 4. As a result, Petitioner pushes the Court to develop the factual record at this stage so that any appeal may adequately address the Court's new ruling. *Id.*

To the extent Respondent objects that Potter did not truly abandon Petitioner, the Court has already considered and rejected this argument. *See supra*. That leaves Respondent's claim that there has been no "per se denial of [Petitioner's] right to appeal" in this matter because, although Petitioner's equitable tolling argument would be "forfeited," Petitioner could nevertheless "attempt to persuade the Sixth Circuit to consider the matter on the merits in the interests of justice" by requesting a certificate of appealability. [R. 31, pp. 12, 13].

Respondent is correct that the Sixth Circuit distinguishes between waiver and forfeiture of arguments made in lower courts. *See id.* at 12 (citing *Berkshire*, 928 F.3d at 530). Although the Supreme Court in *Thomas v. Arn* held that "a court of appeals may . . . establish a rule that the

failure to file objections to the magistrate's report *waives* the right to appeal the district court's judgment," 474 U.S. 140, 155 (1985) (emphasis added), the Sixth Circuit built off of the Supreme Court's clarification in *United States v. Olano*, 507 U.S. 725, 733 (1993), by clarifying that the issue is more properly framed as one of forfeiture, not waiver. Specifically, the Sixth Circuit wrote in *Berkshire* that "forfeiture, rather than waiver, is the relevant term" where a defendant fails to raise an argument in objections to a magistrate judge's report and recommendation. 928 F.3d at 530. As a result, "forfeited issues may in certain circumstances be considered on appeal" in the Sixth Circuit. *Id.*

Nevertheless, Respondent's argument misses the mark by asking the Court to ignore that Petitioner's appellate rights were undoubtedly affected as a result of Potter's abandonment and failure to file objections. In the habeas context, in addition to making the Certificate of Appealability showing, Petitioner would also have to meet the high standard of showing entitlement to relief from forfeiture. *See* 28 U.S.C. § 2253(c)(2); *Berkshire*, 928 F.3d at 530. Such a heightened standard unquestionably impairs the party's appellate rights and requires the party to demonstrate that the forfeited arguments should be heard "in the interests of justice." *Thomas*, 474 U.S. at 155; *Berkshire*, 928 F.3d at 531.

The Court also finds *Mackey* and *Ramirez* persuasive, and declines to distinguish this case based on miniscule factual differences. The Ninth Circuit in *Mackey* and the Seventh Circuit in *Ramirez* each issued their rulings—finding each petitioner's loss of appellate rights sufficient to support Rule 60(b)(6) relief, *see* 682 F.3d at 1252–54; 799 F.3d at 854—where the petitioner's counsel abandoned them and failed to file a notice of appeal as to the district court's denial of their petition within the required timeframe, *see* 682 F.3d at 1248–49; 799 F.3d at 849. Admittedly, the failure to file a notice of appeal completely forecloses a petitioner's appellate rights, *see Bowles v.*

*Russell*, 551 U.S. 205, 213–14 (2007), whereas Petitioner here may still seek to persuade the Sixth Circuit that his appeal and forfeiture should be heard "in the interests of justice," *Thomas*, 474 U.S. at 155; *see also Zimmerman v. Cason*, 354 F. App'x 228, 230 (6th Cir. 2009). However, on these facts, this Court finds that the abandonment of counsel here substantially and detrimentally affected Petitioner's appellate rights sufficient to warrant Rule 60(b) relief.

Having considered and rejected each of Respondent's objections to Judge Smith's Second Recommendation, the Court will now turn to Petitioner's objections.

3. Analysis: Petitioner's Objections

Petitioner raises six enumerated objections to Judge Smith's Second Recommendation,[5] but the Court construes the five objections relevant to the Court's consideration of Petitioner's Rule 60(b)(6) as essentially raising one single objection: Petitioner argues Judge Smith should have ordered more extensive relief under Rule 60(b)(6) beyond vacating the Court's Order

---

[5] At the end of his brief, Petitioner lists his objections to the Rule 60(b)(6) portion of Judge Smith's Second Recommendation as follows:

> 1) The failure to recognize Potter's abandonment of [Petitioner] occurred before the reply to the Warden's response to Potter's equitable tolling brief was due;
> 2) The failure to recommend that the initial magistrate judge's report and recommendation also be vacated so [Petitioner] can file the reply that Potter should have filed;
> 3) The failure to recommend that everything from the moment Potter undertook representation to the present should be nullified so that it can be redone with unconflicted counsel who conducts the proper investigation and pleads information that falls within the scope of the requirements to even potentially obtain equitable tolling;
> 4) The failure to recognize that Potter had a conflict of interest that should have prevented him from representing [Petitioner] and the taint from that means justice and fairness require allowing [Petitioner] to redo all aspects of proceedings that Potter handled;
> 5) The failure to recognize that factual development remains necessary to reliably determine whether to grant equitable tolling, and to allow the filing of a discovery motion and an evidentiary hearing motion (with Chailland and Potter being deposed, and then, if still necessary, required to testify at an evidentiary hearing) – neither of which can be done if [Petitioner] is only now allowed to file objections to the initial magistrate report and recommendation, which is all the magistrate judge now recommends . . . .

[R. 32, pp. 17–18]. Petitioner's sixth listed objection, included immediately after these, will be addressed in the Court's analysis of the Motion for New Counsel. *See infra* Section III.D.

adopting Judge Smith's First Recommendation, [R. 16], and the Court's corresponding Judgment, [R. 17]. [R. 32, pp. 17–18]. Instead, Petitioner asserts Judge Smith should have reopened the case to a greater extent by permitting additional discovery, holding an evidentiary hearing, and vacating the First Recommendation. *See generally* [R. 32]. According to Petitioner, these measures would account for the fact that Potter purportedly abandoned Petitioner before the due date for Petitioner's reply regarding the Court's Show Cause Order, [R. 8], and this abandonment resulted in no reply being filed on Petitioner's behalf and therefore tainted the First Recommendation itself. *See* [R. 32]. Petitioner argues Judge Smith should have considered these facts as part of the Second Recommendation and, as a result of such consideration, should have recommended broader relief. *See id.*

In response, Respondent argues additional relief, such as factual development as to Petitioner's equitable tolling claim, is not warranted. In support, Respondent reiterates that Petitioner "has never alleged that Chailland did anything worse than simply miscalculate the filing deadline," and Respondent argues that if this is accurate, Petitioner would not be entitled to equitable tolling under Sixth Circuit precedent. [R. 34, p. 2]. Respondent points out that habeas petitioners are typically not entitled to discovery, and that "good cause" is required for a district court to permit such discovery. *Id.* To that end, Respondent notes, the Sixth Circuit only requires discovery in habeas cases where there is reason to believe the Petitioner could show he is entitled to relief if he had such discovery. *Id.* at 2–3. Respondent argues Petitioner cannot make this showing because Petitioner failed to allege Chailland did anything more negligent than miscalculate the filing deadline. *Id.* at 3. Respondent also points out that Petitioner bears the burden of establishing the materiality of discovery material, and argues Petitioner would be unable to demonstrate materiality where he only alleges Chailland miscalculated the filing deadline. *Id.* In

other words, Respondent argues that because Petitioner's equitable tolling claim fails as a matter of law under the alleged facts, and because Petitioner provides no reason to think additional discovery would produce different facts such that the controlling law might change, the Court should not allow that additional discovery. *See generally id.*

Turning to Petitioner's claim that he is entitled to relief beyond that ordered by Judge Smith, Rule 60(b) permits a court to "relieve a party . . . from a final judgment, order or proceeding . . . ." Fed. R. Civ. P. 60(b). Where a court grants a Rule 60(b) motion, the court cannot grant relief beyond that contained in the vacated order or judgment as part of its order. *See, e.g., Lorain NAACP v. Lorain Bd. of Educ.*, 979 F.2d 1141, 1153 (6th Cir. 1992) ("[Rule] 60(b) allows for relief from the terms of a consent decree where the terms are no longer equitable. There appears to be no comparable provision addressing a party's request for an increase in the burdens of a consent judgment." (citation omitted)); *In re Westcott*, 135 F.4th 243, 246 (5th Cir. 2025) (finding the district court improperly used Rule 60(b) to reopen a suit previously dismissed as moot); *Delay v. Gordon*, 475 F.3d 1039, 1044–1047 (9th Cir. 2007) (citing 12 *Moore's Federal Practice* § 60.25 (Matthew Bender 3d 2004)) (finding Rule 60(b) could not be used to assert a new legal claim against a nonparty to the original judgment); *Adduono v. World Hockey Ass'n.*, 824 F.2d 617, 620 (8th Cir. 1987) (determining Rule 60(b) allowed it to reopen settled litigation but did not permit award of attorney's fees to party that breached the settlement agreement); *United States v. $119,980*, 680 F.2d 106, 107 (11th Cir. 1982) ("Rule 60(b) is available . . . only to set aside the prior order or judgment. It cannot be used to impose additional affirmative relief."). Phrased differently, "Rule 60(b) may provide relief from the existing obligations created by a judgment or decree, but . . . it may not create any new obligations." 12 *Moore's Federal Practice* § 60.25 (Matthew Bender 3d 2004).

Under this standard, it is not clear to the Court that under Rule 60(b) alone, the Court can grant Petitioner's request for additional discovery and factual development as to his case, including his request for an evidentiary hearing, at this juncture in the proceedings. These requests appear to seek to "create . . . new obligations," not "provide relief from . . . existing obligations." *Id.* Petitioner cites to no authority, and the Court's review of applicable caselaw and other sources finds no authority, that suggests Rule 60(b) contemplates the award of relief beyond that afforded from vacating the Court's previous order and judgment. *See generally* [R. 33].

But regardless of the limits of Rule 60(b) relief at this juncture, *once his case is reopened*, Petitioner may certainly seek the additional requested relief for an evidentiary hearing, for discovery, and related matters as part of the objections allowed. The Court understands Petitioner's concerns that Potter's abandonment of Petitioner—manifested in his failure to reply to the Court's show cause order and failure to object to the First Recommendation—may have limited the arguments presented to the Court surrounding equitable tolling.

Once the Court reopens Petitioner's case, the Court will permit Petitioner's objections to the First Recommendation to address *any* equitable tolling arguments Petitioner seeks to raise, regardless of whether Potter or Chailland raised such arguments prior to the First Recommendation. Such relief will fully address Petitioner's concerns surrounding Potter's conflict of interest and the impact of that conflict on the briefing prior to the First Recommendation, as well as the contents of the First Recommendation itself.

Accordingly, in its consideration of *this motion*, the Court will only relieve Petitioner from the Court's Order adopting the First Recommendation and corresponding Judgment dismissing the case. Although the Court may grant the additional relief requested by Petitioner at a later time once the case is reopened, the Court will presently reject Petitioner's objection and adopt the Second

Recommendation's stated relief: reopening the case for the filing of objections to the First Recommendation.

Taken together, the Court rejects all parties' objections to the portion of Judge Smith's Second Recommendation addressing Petitioner's Rule 60(b)(6) motion. The Court will therefore adopt the section of Judge Smith's Second Recommendation addressing Petitioner's Rule 60(b)(6) motion in full, including its recommended relief. However, as outlined above, *see supra*, the Court will permit any objections to the First Recommendation to address *any* equitable tolling arguments—including those seeking discovery or an evidentiary hearing—regardless of whether those arguments were raised in briefing prior to the First Recommendation.

**C. Rule 59(e) Motion**

As previously mentioned, *see supra* Section III.B, Judge Smith observed in the Second Recommendation that Petitioner's arguments for relief under Rule 59(e) and Rule 60(b)(6) are "nearly identical," and further noted the Rule 60(b)(6) standard is more exacting than the Rule 59(e) standard. [R. 30, pp. 6–7 (citing *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 562 (6th Cir. 2016)]. Judge Smith also flagged that "the issue of attorney abandonment more often arises in the context of a Rule 60(b) motion." *Id.* at 7. Judge Smith thus chose to address Petitioner's requests for relief solely under the Rule 60(b) standard. *See id.* at 6–10.

Respondent raised no objections to Judge Smith's treatment of Petitioner's Rule 59(e) motion. *See generally* [R. 31]. Petitioner noted that because Judge Smith "cited to representations made within the Rule 59(e) motion" in addressing the Rule 60(b) motion, his objections are "equally applicable" to the resolution of both motions "to the extent the district court may see any difference in their application and thus the result." [R. 32, p. 2 n.1]. The Court has found that Petitioner is entitled to relief under Rule 60(b), but has limited that relief to vacating its prior Order

adopting Judge Smith's First Recommendation, [R. 16], and the corresponding Judgment, [R. 17], and allowing new objections to the First Recommendation. *See supra* Section III.B.3. In light of Petitioner's vague and summary objections, even if the Court considered them as objections, they fail for the same reasons as above, and also fail because they lodge no particular objection under the Rule 59(e) standard.

Judge Smith's Second Recommendation determined that "relief under Rule 59(e) would be the same" as relief under Rule 60(b). [R. 30, p. 2]. Petitioner made no particularized objection to this conclusion. *See* [R. 32]. Accordingly, the Court need not address this issue de novo, and may adopt this portion of Judge Smith's Second Recommendation in full. *See* 28 U.S.C. § 636(b)(1). Regardless, the Court finds Judge Smith's statement is supported by applicable authorities. Rule 59(e) permits a party to file a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). "When a trial court grants a motion to alter or amend a judgment, and the alteration or amendment is substantive, a new judgment results; the previous judgment no longer exists." 12 *Moore's Federal Practice* § 59.35 (Matthew Bender 3d 2004). Moreover, as in his motion under Rule 60(b), Petitioner provides no support for his argument that relief under Rule 59(e) extends beyond alteration of the previous judgment. *See* [R. 19]. In any event, too, the Court has already explained that the Rule 60(b) standard is more stringent than that under Rule 59(e), and the Court has already found that higher standard is met here. *See supra* Section II.B. Therefore, based on the Court's assessment that relief under Rule 59(e) and relief under Rule 60(b) are substantively the same, as both eliminate the obligations imposed by a prior judgment (or, in the case of Rule 60(b), prior order), taken together with the Court's previous finding that Claimant is entitled under Rule 60(b) to have the Court's Order adopting the First Recommendation, [R. 16], and corresponding Judgment, [R. 17], vacated, with the opportunity to file new objections to the First

Recommendation to address any remaining harm arising from Potter's conflict of interest, the Court will deny Petitioner's Rule 59(e) motion.

**D. Motion for Appointment of Counsel**

Petitioner's final motion before Judge Smith requested the appointment of new counsel outside of DPA. *See* [R. 20]. Judge Smith found the applicable standard in non-capital § 2254 cases to be that under the Criminal Justice Act, 18 U.S.C. § 3006A. [R. 30, p. 11]. Judge Smith established that no constitutional right to counsel exists in a habeas proceeding, *id.* (citing *Post v. Bradshaw*, 422 F.3d 419, 423, n.1 (6th Cir. 2005)), meaning the District Court has significant discretion on whether to appoint counsel and should only do so where justice so requires, *id.* (citing *United States v. Thornton*, No. 06-CV-459-DCR, 2007 WL 1741780, at *1, n.1 (E.D. Ky. May 25, 2007)).

Judge Smith then turned to Petitioner's allegation that neither Barron nor McMahon could continue to serve as counsel in light of their conflict of interest. *See id.* at 11–12. She first noted that Petitioner primarily relied on *Christeson v. Roper*, 574 U.S. 373 (2015) (per curiam), in his argument, in which the Supreme Court held that substitute counsel is appropriate where counsel would be required to "denigrate their own performance" because "a significant conflict of interest arises when an attorney's interest in avoiding damage to his own reputation is at odds with his client's strongest argument—*i.e.*, that his attorneys had abandoned him," *id.* at 378 (citation modified). [R. 30 pp. 11–12].

But Judge Smith noted two key distinctions between Petitioner's case and *Christeson*. First, "the attorneys representing the petitioner in Christeson were still representing the petitioner when the motion to substitute was filed," whereas here, Barron and McMahon would not be required to denigrate their *own* performance to adequately represent Petitioner. *Id.* at 12. Rather, they would

have to attack Chailland's performance, and Chailland is no longer employed by DPA. *Id.* (citing [R. 18, p. 9]). Moreover, even if Petitioner could establish McMahon would have to denigrate her own performance since she was the director of the DPA at the time Chailland blamed his mistake on the DPA's poor training, Judge Smith determined that because Barron was on the same organizational level as Chailland and did not work on any of the same cases as Chailland, Petitioner failed to establish that Barron has an impermissible conflict of interest. *Id.* (citing [R. 18, p. 8 n.4]).

Judge Smith also differentiated Petitioner's case from *Christeson* on the ground that a different legal standard applies; because the petitioner in *Christeson* was sentenced to death, the Supreme Court's analysis was conducted under 18 U.S.C § 3599(e), not 18 U.S.C. § 3006A. *Id.* And, under the standard of § 3006A, Judge Smith found Petitioner did not show new counsel was necessary, since Petitioner's request "is rooted almost entirely in the proposition that Barron and McMahon would be required to testify as fact witnesses in an evidentiary hearing because further facts need to be developed before ruling on whether equitable tolling is applicable here," but the next step in the case would be for Petitioner to file objections to the First Recommendation should the Court adopt the Second Recommendation. *Id.* at 12–13. Judge Smith noted that should the Court later determine that an evidentiary hearing is necessary, Petitioner could renew his request for appointment of different counsel at that time. *Id.* at 13.

Petitioner objects to this conclusion. [R. 32, pp. 17–18]. In support, Petitioner reiterates his claim that McMahon and Barron have a conflict such that they are unable to adequately represent Petitioner without denigrating their own performance. *See id.* at 17. This is because they "have knowledge of the actual training that was and was not occurring in the non-capital post-conviction unit of DPA during the relevant timeframes," as well as other information relevant to the equitable tolling inquiry. *Id.* Petitioner contends this information should be pled in any briefing regarding

equitable tolling, "particularly if [the] Court reopens proceedings to the point of allowing full briefing regarding equitable tolling . . . ." *Id.* As a final note, Petitioner argues that "[a]ppointing Perkovich [as new counsel] would likely not be overly expensive," at least "compared to most cases," such that should the Court's concern lie in the cost of the appointment, that concern is unwarranted. *Id.* at 17 n.4. In sum, Petitioner restates his point that McMahon and Barron have a conflict of interest that would require them to denigrate their own performance in order to adequately represent Petitioner. *See generally id.* at 17–18.

In response, Respondent argues appointing new counsel is not necessary. [R. 34, pp. 6–9]. Respondent argues that Petitioner must show he would suffer "actual prejudice" as a result of his continued representation by Barron and McMahon in order to show that there is a conflict. *Id.* at 7–8 (quoting *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006) and citing *In re Hanna*, 987 F.3d 605, 610 (6th Cir. 2021)). Based on this, Respondent claims Petitioner cannot show actual prejudice at this time because even if Potter abandoned Petitioner, Petitioner has provided no reason to think Chailland did anything more than miscalculate the filing deadline. *Id.* at 8. In other words, even if Chailland was not properly trained at the DPA or if the DPA suffered systemic issues with timeliness, none of that is relevant—and thus no conflict arises for Barron and McMahon—if Chailland only miscalculated the filing deadline. *Id.* at 9. As a final point, Respondent notes that under Kentucky's conflict-imputation rules, any conflict of interest in Chailland or Potter's continued representation of Petitioner is not automatically imputed to the entire DPA. *Id.* at 8–9.

As a preliminary matter, the Court notes that Petitioner's objection raises the same arguments previously made in Petitioner's motion for appointment of new counsel. *Compare* [R. 20, pp. 2–3 (Petitioner's motion)], *with* [R. 32, pp. 17–18 (Petitioner's objections to Second

Recommendation)]. Petitioner's conclusory objection does not attempt to explain how Judge Smith erred in her understanding of the facts or the law relevant to the appointment of new counsel. Instead, Petitioner broadly objects to the Second Recommendation's conclusion based on the same argument that Judge Smith considered and rejected in reaching that conclusion. The Court need not review these rehashed arguments that Judge Smith has already thoughtfully and accurately addressed. *See Dundee*, 2020 WL 511520, at *1 (citing *Howard*, 932 F.2d at 509); *Roberts*, 2010 WL 2794246, at *7; *McClain*, 2019 WL 7288768, at *2. Objections such as these that seek to take a "second bite at the apple" "undermine the purpose of the Federal Magistrate's Act, 28 U.S.C. § 636, which serves to reduce duplicative work and conserve judicial resources." *Owens v. Comm'r of Soc. Sec.*, No. 1:12-CV-47, 2013 WL 1304470, at *3 (W.D. Mich. Mar. 28, 2013).

Nevertheless, based on a review of the record, the Court agrees with Judge Smith's analysis, findings, and conclusions under any applicable standard. The Court has already determined that the law requires Petitioner's relief under Rule 60(b)(6) to be limited to vacating the Court's Order adopting the First Recommendation, [R. 16], and corresponding Judgment, [R. 17], and allowing new objections to be filed. *See supra* Section III.B.3. At this time, there is thus no need to assume an evidentiary hearing—at which McMahon and Barron might have a true conflict of interest—is necessary in this matter, and the interests of justice do not require the appointment of new counsel toward that end at this time. *See* 18 U.S.C. § 3006A. Should the Court later determine that an evidentiary hearing is needed, Petitioner may renew his request. Finally, the Court is persuaded by Respondent's point that a conflict of interest by one member of a government agency is not automatically imputed to every member of that agency. [R. 34, pp. 8–9 (quoting *Samuels v. Commonwealth*, 512 S.W.3d 709, 716 (Ky. 2017) ("Simply and only because they were both public defenders in the same office is not enough [to show a conflict of interest in

violation of the Sixth Amendment].”))]. The mere fact that Barron and McMahon worked in the same unit as Chailland and Potter is not enough to disqualify them as counsel here. Although McMahon may be implicated by the same conflict of interest that arguably affected Potter—namely, Chailland’s allegation that training at the DPA was wholly insufficient on matters such as these—Barron is not, since he operated on the same level at Chailland at the time of Chailland’s mistake. [R. 18, p. 8 n.4]. Taken together, the Court concludes appointment of new counsel is not warranted at this time.

## IV. CONCLUSION

For the above-stated reasons, the Court will deny Petitioner’s Motion to Stay without prejudice as moot, grant Petitioner’s Rule 60(b)(6) motion in part, deny Petitioner’s Rule 59(e) motion as moot, and deny Petitioner’s Motion for New Counsel. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Magistrate Judge Smith’s Report and Recommendation, [R. 30], is **ADOPTED** as the Opinion of the Court.

2. Respondent’s Objections to Magistrate Judge’s May 27, 2026 Report & Recommendation Regarding Reopening Case, [**R. 31**], are **OVERRULED**.

3. Petitioner’s Objections to Magistrate Judge’s May 27, 2026 Report and Recommendation, [**R. 32**], are **OVERRULED**.

4. Petitioner’s Fed. R. Civ. P. 59(e) Motion to Vacate Judgment Denying Habeas Relief, [**R. 18**], is **DENIED**.

5. Petitioner’s Fed R. Civ. P. 60(b)(6) Motion to Reopen Federal Habeas Proceedings, [**R. 19**], is **GRANTED IN PART**.

6. The Court's Order Adopting Magistrate Judge's Amended Report and Recommendation, [**R. 16**], is **VACATED**.

7. The Court's Judgment, [**R. 17**], is **VACATED**.

8. Petitioner **SHALL** have **forty-five (45) days from the entry of this order** within which to file objections to the First Recommendation, [**R. 15**]. These objections **MAY** address ***any*** equitable tolling arguments—including those seeking discovery or an evidentiary hearing—regardless of whether those arguments were raised in briefing prior to the First Recommendation. Any reply from Respondent **SHALL** be filed **within twenty-one (21) days** from the filing of Petitioner's objections.

9. Petitioner's Motion to Appoint Conflict-Free Counsel, [**R. 20**], is **DENIED WITHOUT PREJUDICE**.

10. Petitioner's Motion to Stay Proceedings Pending Determination of Motion to Appoint Counsel, [**R. 21**], is **DENIED**.

This the 28th day of August, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY